1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VICTOR JOSEPH RODELLA,

11                 Plaintiff,                    No. CIV S-09-0794 GEB EFB P

12          vs.

13   TERRY JACKSON, et al.,
                                                 ORDER AND
14                 Defendants.                   FINDINGS AND RECOMMENDATIONS
     _____/

15

16          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Currently before the court are (1) plaintiff's motion for summary judgment

18   (Docket No. 26); (2) plaintiff's motions for default judgment (Docket Nos. 31 and 34); (3)

19   Defendants' motion to dismiss (Docket Nos. 30 and 47); (4) plaintiff's request for production of

20   documents (Docket No. 32); and (5) plaintiff's request that the court order that he be seen by a

21   doctor not employed by the California Department of Corrections and Rehabilitation ("CDCR")

22   (Docket No. 33).  For the following reasons, it is recommended that all of plaintiff's motions for

23   summary judgment, default judgment, and outside medical care be denied.  It is further

24   recommended that defendants' motion to dismiss be denied.  Lastly, it is ordered that plaintiff's

25   request for production of documents be stricken.

26   ////

**I. Background**

Plaintiff's Amended Complaint, filed October 9, 2009, alleges that defendants Jackson and Hibbits assaulted him and that unidentified medical staff failed to properly treat him for the injuries he sustained in the assault. Dckt. No. 10. Other documents filed in this action reveal that the alleged assault took place on July 30, 2008. *E.g.*, Dckt. No. 1 at 2; Dckt. No. 30 at 3. In its screening order of March 10, 2010, the court found that plaintiff had stated cognizable excessive force claims against defendants Jackson and Hibbits, but dismissed the remaining claims with leave to amend. Dckt. No. 12. Plaintiff elected not to amend the complaint and returned documents for service of process on defendants Jackson and Hibbits. Dckt. No. 17.

Plaintiff filed a civil action against these defendants based on the same allegations once before, in Case No. CIV S-08-2291 SOM. That case was dismissed without prejudice on January 21, 2009 after the court concluded that plaintiff had not exhausted his administrative remedies prior to filing the initial complaint in the action.[1] Case No. CIV S-08-2291 SOM, Dckt. No. 18. In doing so, the court noted that plaintiff had filed an amended complaint on December 29, 2008 indicating that he had completed the grievance process subsequent to filing the initial complaint. *Id.* at 6. The court further noted, "This dismissal is without prejudice, meaning that Rodella may immediately file another complaint if he has sufficiently exhausted his administrative remedies." *Id.* at 8.

**II. Plaintiff's Motion for Summary Judgment**

Plaintiff has filed a motion for summary judgment. Dckt. No. 26. The motion itself is 1.5 pages long and is accompanied by an affidavit of the same length. Dckt. Nos. 26 & 27. In the motion, plaintiff refers to unidentified "pleadings, affidavits, declarations, and exhibits" as

---

[1] Defendants have provided some documents from Case No. CIV S-08-2291 SOM as exhibits to the motion to dismiss. The court takes judicial notice of these documents and any others from Case No. CIV S-08-2291 SOM that are relevant to the determination of the motions being addressed herein. *United States v. Author Servs., Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986) ("[A] court may take judicial notice of its own records.").

2

1  well as his original complaint in Case No. CIV S-08-2291 SOM and claims that these documents

2  establish that "there should be no further dispute in this matter that the excessive force was done

3  only to cause harm" and that the force was not inflicted "in good faith but as a personal

4  retaliation used to maliciously and sadistically cause great bodily injuries." Dckt. No. 26.  The

5  motion was filed on May 19, 2010, well before either defendant had returned a waiver of service

6  or were otherwise required to appear in the action and there has been no response to the motion

7  by any defendant.[2]

8      Apart from being filed prematurely, plaintiff's motion fails to comply with Local Rule

9  260(a).  That rule requires that

> Each motion for summary judgment or summary adjudication shall be
> accompanied by a "Statement of Undisputed Facts" that shall enumerate
> discretely each of the specific material facts relied upon in support of the motion
> and cite the particular portions of any pleading, affidavit, deposition,
> interrogatory answer, admission, or other document relied upon to establish that
> fact. The moving party shall be responsible for the filing of all evidentiary
> documents cited in the moving papers.

14  Plaintiff has not provided a statement of facts specifying each material fact relied on and citing

15  each item of supporting evidence, and it is not clear whether the material facts necessary to

16  establish plaintiff's excessive force claims are, indeed, undisputed.  Thus plaintiff has not

17  complied with either Local Rule 260(a) or Rule 56 of the Federal Rules of Civil Procedure.

18  Accordingly, the undersigned recommends denial of plaintiff's motion for summary judgment

19  without prejudice to plaintiff filing a renewed motion for summary judgment that complies with

20  the Federal Rules of Civil Procedure and this court's Local Rules.[3]

21  ////

---

[2] The court's inquiry to the U.S. Marshal has revealed that the Marshal sent defendant Jackson a waiver of service form on May 4, 2010 and that defendant Jackson executed the form on June 30, 2010.  See also Dckt. No. 46.  The Marshal, having been informed that defendant Hibbits did not receive the waiver of service form when it was initially sent, resent the form on September 8, 2010, and defendant Hibbits executed the form on November 8, 2010.

[3] If the plaintiff files a new motion for summary judgement defendants shall comply with Local Rule 230(c) and timely file either an opposition or statement of no-opposition.

**III. Plaintiffs' Motions for Default Judgment**

Plaintiff has filed two briefs, on July 6, 2010 and July 9, 2010, seeking entry of default judgment against defendants. Dckt. Nos. 31 & 34. As noted earlier in these recommendations, defendant Jackson was sent a waiver of service form on May 4, 2010 and defendant Hibbits was sent a waiver of service form on September 8, 2010. Defendant Jackson timely appeared within 60 days of May 4, 2010 by filing the pending motion to dismiss on July 6, 2010. *See* Fed. R. Civ. P. 12(a) (providing that a defendant must serve a response to the complaint within 60 days after the request for a waiver was sent). Defendant Hibbits timely appeared by filing a notice of joinder in defendant Jackson's motion to dismiss on November 10, 2010. *Id.* Accordingly, entry of default judgment against defendants is not appropriate, and plaintiff's motions for default judgment must be denied.

**IV. Plaintiff's Motion for "Outside Care"**

Plaintiff has filed a "Motion Ordering California Department of Corrections to Provide Outside Care." Dckt. No. 33. In the motion, plaintiff claims that the injuries he sustained in the alleged assault by defendants Jackson and Hibbits are not being adequately treated by prison medical staff and requests an order directing the CDCR to have him seen by "an outside doctor." However, CDCR is not a party to the action, and plaintiff's claims of inadequate medical treatment against unknown parties have been dismissed without prejudice by plaintiff's consent following the court's screening order limiting the case to the excessive force claims asserted against defendants Jackson and Hibbits. Further, plaintiff has not made the requisite showing to obtain preliminary injunctive relief. *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). As plaintiff has not made the requisite showing and the requested relief is outside the scope of this action as it currently stands, the undersigned recommends that his motion for

4

1   outside care be denied.

2   **V. Defendants' Motion to Dismiss**

3          Defendant Jackson, joined by defendant Hibbits, moves to dismiss plaintiff's complaint

4   on the grounds that plaintiff has failed to exhaust his administrative remedies as required by 42

5   U.S.C. § 1997e(a).  Dckt. Nos. 30 & 47.

6          Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

7   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

8   confined in any jail, prison, or other correctional facility until such administrative remedies as

9   are available are exhausted." 42 U.S.C. § 1997e(a).  This requirement is mandatory and

10  unequivocal.  *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198,

11  1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition

12  to judgment, but it did not.  The actual statute makes exhaustion a precondition to *suit*." (citation

13  omitted)).  A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the

14  conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he

15  submits his complaint to the court.  *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006).

16  Therefore, a prisoner must exhaust available administrative remedies before filing any papers in

17  federal court and is not entitled to a stay of judicial proceedings in order to exhaust.  *Id.* at 1051;

18  *McKinney*, 311 F.3d 1198.

19          A.  Standard of Review Applicable to Motions to Dismiss for Failure to Exhaust

20          The failure to exhaust nonjudicial administrative remedies as required by § 1997e(a) is

21  not jurisdictional.  *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003).  Nor does

22  § 1997e(a) require a plaintiff to plead exhaustion.  *Id.* at 1119.  Rather, "§ 1997e(a) creates a

23  defense – defendants have the burden of raising and proving the absence of exhaustion." *Id.*

24  The Ninth Circuit determined in *Wyatt* that because the defense of failure to exhaust "is not on

25  the merits" and summary judgment "is on the merits," the defense should be treated as a matter

26  in

abatement[4] to be resolved pursuant to a motion made under "unenumerated Rule 12(b)." *Id.* The court stated that "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20.

In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the U.S. Supreme Court held that failure to exhaust under the PLRA is an affirmative defense. It clarified that if the affirmative defense can be decided on the pleadings alone, a motion under Rule 12(b)(6) is appropriate. *Id.* at 215. The Court analogized to a motion to dismiss based on a statute limitations defense and stated:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Id.*

But, even when not addressed to the merits, those affirmative defenses that require the presentation of evidence outside the pleadings (which includes the defense of failure to exhaust

---

[4] A "matter in abatement" is "the suspension or defeat of an action for a reason unrelated to the merits of the claim." *Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005). It has its roots in the common-law "plea in abatement," abolished by Fed. R. Civ. P. 7(c). Rule 7 "unceremoniously abolishes a great deal of ancient procedural dogma that has little place in a streamlined litigation system," Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 3d § 1181, including pleas in abatement. *Black's Law Dictionary* 4 (6th ed. 1990). The "plea in abatement" is an archaic common law "plea which, without disputing merits of plaintiff's claim, objects to place, mode or time of asserting it. It allows plaintiff to renew suit in another place or form, or at another time, and does not assume to answer an action on its merits, or deny existence of a particular cause of action on which plaintiff relies." *Black's Law Dictionary* 1151 (6th ed. 1990). The Advisory Committee Notes to Rule 7(c) state that all statutes using the word "plea" are "modified in form by this rule." Thus, for example, the Revision Notes to 28 U.S.C. § 2105 (West 2006), which prohibits reversal of a District Court's ruling on non-jurisdictional "matters in abatement" in the Supreme Court and Circuit Courts of Appeals states, "Rule 7(c) of the Federal Rules of Civil Procedure abolished all pleas, and the rules adopted the motion as a substitute therefor. The words 'matters in abatement' were, therefore substituted for the abolished 'plea in abatement' and 'plea to the jurisdiction.'" Modernly, a party makes a motion under Rule 12 or Rule 41, as appropriate, instead of a plea in abatement. *See Black's Law Dictionary* 4, 1151-1152 (6th ed. 1990) ("abatement of action," and "plea in abatement").

as required by 42 U.S.C. § 1997e(a)) must be addressed under standards that apply the procedural safeguards of Rule 56, so that disputed material factual issues and the credibility of conflicting witnesses are resolved through live testimony and not on paper.[5]  Fed. R. Civ. P. 12(d) (where a party presents affidavits or other matters outside the pleadings in support of its motion, the court must treat the motion "as one for summary judgment under Rule 56"), 56(b); *Panero v. City of North Las Vegas*, 432 F.3d 949, 952 (9th Cir. 2005).[6]  The Court in *Jones* made clear that, "beyond the departures specified by the PLRA itself," nothing in the PLRA suggests that usual procedural practices should not be followed and noted that departures from the usual procedural requirements are to be expressly made by Congress.  *Jones*, 549 U.S. at 212, 214-16. Additionally, the Ninth Circuit recognized in *Wyatt* that, when the district court looks beyond the pleadings to a factual record, which commonly occurs in deciding an exhaustion motion, the court must do so under "a procedure closely analogous to summary judgment."  *Wyatt*, 315 F.3d at 1119, n.14.

////

---

[5]  As discussed above, the reasoning in *Wyatt* for adhering to Rule 12(b) appears to have been that frequently a motion for "summary judgment is on the merits," and a failure to exhaust is independent of the substantive claims before the court.  *Wyatt*, 315 F.3d at 1119.  But, a motion asserting an affirmative defense, even when it does not address the merits of the substantive claims, must be brought under Rule 56 if the motion relies upon matters extrinsic to the complaint to establish the factual predicate for the defense.  Motions challenging exhaustion of administrative remedies frequently rely on declarations and exhibits that are extrinsic to the complaint.

[6]  Several other Circuits have applied summary judgment principles when the defense of failure to exhaust cannot be decided on the pleadings.  *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (addressing exhaustion at summary judgment); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (reversing grant of summary judgment on exhaustion and remanding for further proceedings); *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 379-80 (5th Cir. May 1, 2008) (addressing exhaustion at summary judgment); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001) (reviewing evidence elicited at trial as to whether prisoner exhausted available remedies); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (addressing exhaustion at summary judgment); *but see Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) (finding that PLRA exhaustion should be treated as a matter in abatement and should be decided on a Rule 12(b) motion, even when factual disputes exist); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (rejecting the summary judgment and the Rule 12(b) approaches to PLRA exhaustion and instead determining that once a PLRA exhaustion defense is raised, a special evidentiary hearing should be held to address that defense before litigation on the merits proceeds).

1    Thus, whether a motion asserting an affirmative defense such as failure to exhaust may

2    be raised under Rule 12 or Rule 56 is not determined by whether the defense asserted in the

3    motion goes to the "merits" of the claim.  Whether judgment is sought on the merits or whether

4    the motion seeks to bar consideration of the merits based on a technical ground that precludes

5    reaching the merits (i.e., exhaustion, claim or issue preclusion, a statute of limitations, etc.), the

6    determining factor is whether the factual predicate for the motion is based on the text of the

7    pleading or instead depends upon evidence submitted with the motion.  *See Jones*, 549 U.S. at

8    215 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as

9    true, show the plaintiff is not entitled to relief.").

10    Here, defendant's motion necessarily requires the court to consider the declaration and

11    exhibits presented for the purpose of proving the absence of exhaustion.  Because care must be

12    taken not to resolve credibility on paper as it pertains to disputed issues of material fact, the

13    undersigned applies, as *Wyatt* suggests, a standard "closely analogous to summary judgment."

14    315 F.3d at 119, n.15.  If, under that standard, the court concludes that the prisoner has failed to

15    exhaust administrative remedies, the proper remedy is dismissal without prejudice.  *Id.* at 1119-

16    20.

17    B.  Summary Judgment Standards

18    Under Rule 56, resolution of the exhaustion issue in favor of defendants is appropriate

19    when it is demonstrated that there is "no genuine issue as to any material fact" over the question.

20     Fed. R. Civ. P. 56(c).  The principal purpose of Rule 56 is to isolate and dispose of factually

21    unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus,

22    the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there

23    is a genuine need for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

24    587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

25    Under summary judgment practice, the moving party bears the initial responsibility of presenting

26    the basis for its motion and identifying those portions of the record, together with affidavits, that

8

it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986);  *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir.1995).

For the opposing party to establish a genuine issue of fact the factual dispute must meet two requirements.  First, the dispute must be over a fact(s) that is material, i.e. one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law, which here involves the question of whether plaintiff has met the exhaustion requirement.  *Id.* ("As to materiality, the substantive law will identify which facts are material.").

Second, the dispute must be genuine.  In this regard, the court must focus on which party bears the burden of proof on the factual dispute in question.  Where the opposing party bears the burden of proof on the issue in dispute, conclusory allegations, unsupported by factual material, are insufficient to defeat the motion.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the record relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477 U.S. at 248, 252.  If the evidence presented could not support a judgment in that party's favor, there is no genuine issue.  *Id.*; *Celotex*, 477 U.S. at 323.

Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that affects the outcome of the case.

////

On April 14, 2009, the Court advised plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

C. Exhaustion Under California Law

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

To initiate the process, an inmate must fill out a simple form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 (12/87) ("Form 602"), that is made "readily available to all inmates." Cal. Code Regs. tit. 15, § 3084.1(c) (2004). The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, as explained on Form 602 itself, the prisoner "must first informally seek relief through discussion with the appropriate staff member." The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.

If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. *See* Cal. Code Regs. tit. 15, §§ 3084.5(b)-(d). Although California labels this three-step process "formal" review (apparently to distinguish this process from the prior step), the three-step process is relatively simple. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days-three weeks-of the action taken. *Id*., § 3084.6(c). This level may be bypassed by the Appeals Coordinator in certain circumstances. *Id*., § 3084.5(b). Within 15 work-days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning

10

1  the form to the inmate.

2      If the prisoner receives an adverse determination at this first level, or if this level is

3  bypassed, the inmate may proceed to the second level of review conducted by the warden.  *Id.*,

4  §§ 3084.5(c), (e)(1).  The inmate does this by filling in part F of Form 602 and submitting the

5  form within fifteen work-days of the prior decision.  Within ten working days thereafter, the

6  reviewer provides a decision on a letter that is attached to the form.  If the prisoner's claim is

7  again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain

8  the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of

9  the CDCR within 15 working days.  *Id.*, § 3084.5(e)(2).  An inmate's appeal may be rejected

10  where "[t]ime limits for submitting the appeal are exceeded and the appellant had the

11  opportunity to file within the prescribed time constraints."  *Id.*, § 3084.3(c)(6).  *Woodford v.*

12  *Ngo*, 548 U.S. 81, 85-86 (2006).  Generally, completion of the third level, the Director's Level of

13  Review, exhausts the remedy.  Cal. Code Regs. tit. 15, § 3084.1(a).  All steps must be completed

14  before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him;

15  exhaustion during the pendency of the litigation will not save an action from dismissal.

16  *McKinney*, 311 F.3d at 1200.  The claim must be properly exhausted; therefore, an untimely or

17  otherwise procedurally defective administrative grievance or appeal does not satisfy the

18  exhaustion requirement.  *Woodford*, 548 U.S. at 83-84.

19      D.  <u>Analysis</u>

20      Defendant Jackson, joined by defendant Hibbits, contends that plaintiff's claim that

21  defendants assaulted him on July 30, 2008 has not been exhausted because records for the

22  CDCR's Inmate Appeals Branch ("IAB") reveal that plaintiff has not processed any appeal based

23  on the assault allegations through the Director's Level of Review.  Dckt. No. 30, Def. Jackson's

24  Mot. to Dism., Ex.5, Decl. of D. Foston (hereinafter "Foston Decl.") at ¶ 9 & Ex. A thereto;

25  Dckt. No. 47, Def. Hibbits' Joinder in Def. Jackson's Mot. to Dism.  Defendants have also

26  submitted plaintiff's original complaint in Case No. CIV S-08-2291 SOM, which contains a

1   CDCR 602 inmate appeal form filled out and signed by plaintiff on September 25, 2008[7]

2   regarding the assault allegations.  Dckt. No. 30, Ex. 2.  The form bears no institutional log

3   number and no date-stamp indicating receipt by prison officials.  *Id.*  It includes a handwritten

4   statement by plaintiff that "C/O Jackson tore up my inmate 602 appeal & keep [sic] my 2nd

5   page."  *Id.* at 8.  On the complaint form plaintiff filed originally in Case No. CIV S-08-2291

6   SOM, plaintiff similarly wrote that he had not exhausted his administrative remedies because

7   "they will not let my 602 leave the building.  C/O Jackson tore this one up & gave it back to

8   [me] under my cell door."  *Id.* at 2.

9        It is not disputed that plaintiff had not exhausted his administrative remedies at the time

10  that he filed Case No. CIV S-08-2291 SOM, when he had just days earlier filled out, but

11  apparently not successfully submitted, an administrative grievance form regarding the alleged

12  assault.  Plaintiff contends, however, that he subsequently successfully exhausted his

13  administrative remedies, albeit through an unconventional procedure.  According to plaintiff, he

14  sent his grievance to "internal affairs bypassing all informal levels of the appeals coordinators

15  office" because "corrections officers did not allow it to leave our unit."  Dckt. No. 42.  Plaintiff

16  claims that "internal affairs" ordered HDSP officials to process the grievance, which was dated

17  August 7, 2008 and given a log number of "6802653."  *Id.*; Dckt. No. 41.  The grievance was

18  then "granted in full and sent to your court prior to my amended complaint."  Dckt. No. 42; *see

19  also* Dckt. No. 1 at 6 (stating that plaintiff has exhausted his claims "with the help of internal

20  affairs" and "thru our warden Mr. Michle [sic] McDonald, our associate warden Mr. John Prez

21  [sic] thru the Sacramento Appeal Office.").

22       In deference to plaintiff's claims that prison staff have confiscated his legal materials

23  (Docket No. 32), the court has scoured the docket in both this action and Case No. CIV S-08-

24  2291 SOM, looking for the documentation plaintiff asserts he has filed showing the exhaustion

25

26       [7] This date is 4 days before the complaint in Case No. CIV S-08-2291 SOM was filed.

of the claims raised herein.[8]  No such documentation has been submitted in this action.  *See* Dckt. No. 25 (plaintiff informing the court that he is submitting a copy of the relevant 602, but no copy attached).  In Case No. CIV S-08-2291 SOM, plaintiff submitted five potentially relevant documents.  First, in a filing entitled "Exhibit C," plaintiff submitted the first page of a response to a grievance he had filed about the alleged assault.  Case No. CIV S-08-2291 SOM, Dckt. No. 12 at 2.  The grievance was assigned a log number of HDSP-S-07-02653 (this is likely a misprint of HDSP-S-*08*-02653), and the response is dated October 7, 2007 (again a likely typo as the document responds to plaintiff's allegations of an assault on July 30, *2008*).  *Id.*  As plaintiff has not provided the entire response but only the first page, the court cannot determine what action the reviewer took.  *Id.*  Second, "Exhibit C" contains a letter from IAB to plaintiff regarding a grievance with a log number of HDSP-08-02659 concerning unspecified "Staff Complaints."  *Id.* at 3.  The IAB informed plaintiff that it was screening out the grievance because plaintiff had not processed it through the second level of review.  *Id.*  Third, "Exhibit C" contains a grievance regarding the assault on CDC form 602 with a log number of HDSP-S-08-02653, signed by plaintiff on August 7, 2008 and file-stamped as received by HDSP Appeals on September 22, 2008 and IAB on October 29, 2008.  *Id.* at 4-6.  On the form, plaintiff requested certain medical treatment.  *Id.* at 4.  The form indicates that the grievance was partially granted on October 7, 2008 at the first level of review, but no explanation is provided on the form, and plaintiff has not submitted the explanatory letter that customarily accompanies a partial grant describing what action will be taken.  *Id.* at 5.  Fourth, plaintiff submitted most of another CDC form 602 requesting medical care for injuries sustained when defendant Jackson pepper-sprayed him while defendant Hibbits watched.  Case No. CIV S-08-2291 SOM, Dckt. No. 14 at 6-7.

[8] Plaintiff is admonished that in all future briefs which rely on supporting documents, he must attach such documents to the brief or inform the court of the exact document he relies on, with reference to case number and date of filing.  The court does not have the time or resources to perform the type of docket review necessitated by plaintiff's vague claims to have filed certain documents "already."  As the Seventh Circuit has aptly stated, "[j]udges are not like pigs, hunting for truffles buried in briefs."  *United States v Dunkel*, 927 F2d 955, 956 (7th Cir 1991)).

1   That grievance was submitted on August 17, 2008 and assigned a log number of HDP-31-08-

2   15405. *Id.* at 6.  It was granted at the first level of review when plaintiff was examined by

3   medical staff, who indicated on the form that plaintiff stated that his "602 is satisfied."  *Id.* at 7.

4   Lastly, plaintiff has submitted a letter from the California Office of the Inspector General

5   responding to "correspondence" sent by plaintiff and telling plaintiff to process his "issues"

6   through the prison administrative process before resubmitting the complaint to the Office of the

7   Inspector General.  *Id.* at 8.

8          In short, none of the documents submitted by plaintiff definitively show the resolution of

9   an administrative appeal filed by plaintiff regarding the alleged assault that is the subject of this

10  action.  While plaintiff did apparently file at least one appeal specifically mentioning the alleged

11  misconduct by defendants Jackson and Hibbits, it is unclear how these grievances were resolved.

12  One – log number HDSP-S-08-02653 – appears to have been granted in part at the first level, *see*

13  Case No. CIV S-08-2291 SOM, Docket No. 12 at 7.

14         Defendants contend simply that, by failing to take a grievance regarding the assault

15  through the Director's Level of review, plaintiff failed to exhaust his administrative remedies.

16  However, the applicable regulations provide that review beyond the First Level is reserved for

17  appeals that were *denied* at the First Level.  Cal. Code Regs. tit. 15, § 3084.5(c), (d).  If plaintiff

18  was granted all the relief he requested in log number HDSP-S-08-2653, he would have no

19  grounds for seeking higher levels of review.  Moreover, having obtained all relief requested,

20  such review would have been pointless.  In such a situation, the issue has been administratively

21  exhausted.  *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (stating that an issue has been

22  exhausted where the agency has granted some relief and no other relief is available through the

23  administrative process).  Defendants have filed no reply to plaintiff's opposition to the motion to

24  dismiss countering plaintiff's contention that he did, in fact, process a grievance regarding the

25  assault through to exhaustion or addressing the documents summarized above.

26  ////

Nor have defendants responded to plaintiff's repeated claims that defendant Jackson prevented plaintiff from processing his grievance in the traditional manner.  The U.S. Supreme Court and the Ninth Circuit Court of Appeals have not decided whether the PLRA's exhaustion requirement is subject to exceptions.  *Woodford v. Ngo*, __ U.S. __, 126 S. Ct. 2378, 2393 (2006) (Breyer, J., concurring) (assuming exceptions apply); *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) ("It is unclear whether we can read exceptions into the PLRA's exhaustion requirement.").  Many other circuits have concluded that an exception exists, or exhaustion has been completed, where the petitioner could not properly exhaust due to the misconduct or inaction of prison officials.  *E.g.*, *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was preventing from availing himself of it."); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that courts must "ensure any defects in exhaustion were not procured from the action or inaction of prison officials"); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (holding an administrative remedy unavailable under the PLRA where prison staff fail to respond to a properly-filed grievance or commit misconduct that prevents exhaustion); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("[A]dministrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."); *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (administrative remedies not available under the PLRA where the petitioner could not use the administrative appeals process due to prison officials' conduct or failure to timely process the appeal); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (administrative remedy is unavailable where prison officials fail to timely respond to the inmate's grievance); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (same); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (holding that the district court did not err by declining to dismiss claim for failure to exhaust where prison did not respond to the petitioner's grievance); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (holding that exhaustion occurs when inmate files valid grievance and prison officials' time to respond has expired).

1    While plaintiff's attempts to demonstrate exhaustion have not been ideal, defendants

2  have not established the absence of a material fact regarding exhaustion.  Defendants' bare-

3  bones argument that the lack of documentation of a completed third-level appeal regarding the

4  assault shows that plaintiff did not exhaust is not persuasive, as plaintiff's documents show that

5  the grievance may have been exhausted by being granted at an earlier level of review and

6  plaintiff may be deemed to have exhausted his claim if he was prevented from filing his

7  grievance by defendants' misconduct.  Accordingly, defendants' motion to dismiss must be

8  denied.

9  **VI.  Plaintiff's Request for Production of Documents**

10    Plaintiff has filed a request for production of documents with the court.  Dckt. No. 32, at

11  2.  However, interrogatories, requests for production, requests for admission, responses and

12  proofs of service thereof "shall not be filed with the clerk until there is a proceeding [such as a

13  motion to compel] in which the document or proof of service is at issue.  When required in a

14  proceeding, only that part of the request and response that is in issue shall be filed."  Local Rules

15  250.2-250.4.  As there is no proceeding placing plaintiff's request for production of documents

16  in issue, the request has been improperly filed with the court must be stricken.  The court further

17  notes that discovery will commence in accordance with a discovery and scheduling order to be

18  issued by the court after defendants have filed an answer.  When the discovery schedule issues,

19  plaintiff may serve the request for production of documents on defendants, as opposed to filing it

20  with the court.

21  **VII.  Order and Recommendations**

22    In accordance with the foregoing, it is hereby ORDERED that plaintiff's request for

23  production of documents (Docket No. 32) is stricken.

24    Further, it is RECOMMENDED that:

25    1.  Plaintiff's motion for summary judgment filed May 19, 2010 (Docket No. 26) be

26  denied;

2.  Plaintiff's motions for default judgment filed July 6, 2010 (Docket No. 31) and July 9, 2010 (Docket No. 34) be denied;

3.  Plaintiff's motion for outside care filed July 9, 2010 (Docket No. 33) be denied; and

4.  Defendant Jackson's motion to dismiss filed July 6, 2010 (Docket No. 30) and joined by defendant Hibbits on November 8, 2010 (Docket No. 47) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 7, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17